IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2008

Charles R. Fulbruge III
Clerk

No. 06-30887

DENNIS PATRICK BROWN,

Plaintiff–Appellee,

v.

NACE JERRY MILLER, in his individual and official capacities,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Nace Jerry Miller (Miller) appeals the district court's denial of his motion to dismiss on the grounds of qualified immunity. We affirm in part, dismiss in part, and remand for further proceedings.

I

Because this is an appeal from a denial of a motion to dismiss, these facts are taken from the pleadings and are presented in the light most favorable to the plaintiff. In 1984, Dennis Patrick Brown (Brown) was convicted of rape and sentenced to life in prison. Twenty years later, DNA testing proved him innocent, and he was released. He sued the city of Covington, Louisiana, and

several of its officers for their alleged misconduct in the investigation and prosecution of his case.

Jane Doe,[1] a white woman, was raped in her home in Covington, Louisiana, in 1984. She provided her minipad and underwear to the police, along with specimens from a rape examination, all of which were forwarded to the Louisiana State Police Crime Laboratory. Ms. Doe also assisted the police in creating a sketch of her attacker, though the sketch lacked identifiable features because the attack had occurred in the dark and the attacker had worn a baseball cap and mask. Later, Ms. Doe identified Brown as her attacker in a line-up; he had been asked to volunteer for the line-up only as a "fill-in" and was not represented by counsel. The police obtained samples of blood, hair, and saliva, and fingerprinted Brown but did not arrest him.

The police investigator forwarded the physical samples to the Louisiana State Crime lab, along with an annotation that Brown had been "identified via line-up." Brown alleges that this annotation violated department policy, and that its purpose was to encourage the lab to confirm a genetic match and to suppress any exculpatory results. Miller, the laboratory technician, performed the "ABO test" on the samples, and then compared the antigens in Brown's blood with the antigens found in the mixture of blood and semen from the minipad and underwear. This test revealed the presence of the H antigen in the mixture. Both Jane Doe and Brown had blood type O and were secretors.[2] Brown alleges that at least three scenarios were consistent with these facts: (i) the rapist was

---

[1] The victim's name has been changed to protect her privacy.

[2] A secretor is an individual whose blood antigens appear in his or her bodily fluids, such as saliva and semen.

a non-secretor of any blood type, and the H antigen from the minipad came from Jane Doe's own blood rather from the rapist's semen, (ii) the rapist was a type O secretor, or (iii) the majority of the blood–semen mixture consisted of the victim's own blood, and the characteristics of the semen were "masked" and did not appear in the results. Brown alleges that at this point Miller either intentionally and in bad faith failed to conduct additional, commonly used tests ("Rh tests" and "enzyme tests") that would have made the identification more specific and accurate, and likely excluded Brown as the donor, or, in the alternative, that Miller did conduct those tests, that those tests were conclusively exculpatory, and that Miller concealed the exculpatory results. Brown specifically alleges that these other tests were commonly used in the same lab at the time, that Miller knew about and used those other tests in the same year, that Miller was unable to draw conclusions in similar identification cases without performing those more specific tests, and that Miller could have performed those tests in Brown's case. Miller argues that these facts support an inference either that Miller actually did conduct the tests in this case or that he knew he should have reported that his results were inconclusive without further testing.

Shortly after the testing, Miller gave "verbal confirmation" of a positive match to an investigating officer. Although the content of this conversation is unknown, the officer immediately swore out an affidavit that Brown had been "positively identified" by the blood test. Brown alleges that this verbal confirmation was in violation of police procedure. Police officers arrested Brown, and he was charged with the rape.

Miller later submitted a written report, which stated that the semen donor either had blood type O or was a non-secretor. Brown alleges that this was a

scientifically inaccurate conclusion to draw from the results, because it failed to acknowledge possibility (iii) above—that the H antigen had come only from the victim's own blood and indicated nothing about the rapist. At trial, Miller testified that he could conclude on the basis of his blood tests that Brown was within the 46.5% of the male population who could have contributed the semen. Brown alleges that this statement was inaccurate and misleading for the same reasons his report was misleading.

Based on the blood results, the line-up identification, and what he alleges was a false and coerced confession, Brown was convicted and sentenced to life in prison. Brown alleges that all of the wrongful actions by Miller were done intentionally and in bad faith, and that they were in furtherance of a conspiracy with police officers to deny Brown his constitutional rights because of his race.

The minipad was re-tested in 2003 by the state of Louisiana and the Innocence Project. This testing revealed that Brown could not have been the donor of the semen. Brown was released, and the City of Covington declined to re-prosecute.

Brown sued the City of Covington and several of its police officers and Miller. The five claims against Miller, out of ten total in the initial complaint, are the following:

| | |
|---|---|
| Claim III: | 42 U.S.C. § 1983 claim for depriving Brown of his rights to a fair trial and due process of law; |
| Claim IV: | 42 U.S.C. §§ 1983 & 1985(3) claims for conspiracy to deprive Brown of his rights because of racial animus; |
| Claim VII: | State law claim for malicious prosecution; |
| Claim VIII: | State law claim for intentional infliction of emotional distress; |
| Claim X: | State law claim for spoliation of evidence. |

The remaining claims were against other police officers and the City itself, who are not parties to this interlocutory appeal. Miller filed a motion to dismiss, arguing both that Brown had failed to state a claim and that Miller was entitled to official immunity against Brown's claims. The district court ordered Brown to submit a reply brief in accordance with FED. R. CIV. P. 7(a) and our holding in Schultea v. Wood[3] to plead specific facts that would overcome Miller's assertion of qualified immunity. Brown complied. The district court then denied the motion to dismiss, finding both that Brown had stated a claim and that Miller was not entitled to qualified immunity on the basis of the pleadings and reply. Miller timely appealed the denial of the qualified immunity defense.

## II

We have appellate jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity to the extent that it turns on an issue of law.[4] We review the district court's denial of the qualified immunity defense de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff.[5] In an interlocutory appeal of a denial of qualified immunity, we have jurisdiction to consider only whether "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law."[6]

## A

---

[3] See Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc).

[4] Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251 (5th Cir. 2005).

[5] Id. at 252.

[6] Kinney v. Weaver, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[7]  The qualified immunity defense to such claims seeks to shield from liability government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[8]  Courts must evaluate claims of qualified immunity in a two step process: first, a court must determine whether the "facts alleged show the officer's conduct violated a constitutional right"; if the court finds a violation then it proceeds to the second step, which is to determine whether "the right was clearly established . . . in light of the specific context of the case."[9]  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[10]  There need not be "commanding precedent" that holds that the "very action in question" is unlawful; the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations."[11]

---

[7] Atteberry, 430 F.3d at 252-253.

[8] Kinney, 367 F.3d at 349 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted).

[9] Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted).

[10] Atteberry, 430 F.3d at 256 (quoting Kinney, 367 F.3d at 349-50) (internal quotation marks and alterations omitted).

[11] Id. at 257 (internal quotation marks and citations omitted).

Brown alleges two acts that he claims violated his rights. First, he alleges that Miller overstated the results of the blood tests he conducted, effectively fabricating evidence by overstating his results and putting forward misleading scientific conclusions. Second, he alleges that Miller ran additional tests besides those he reported (i.e., enzyme tests), that the results exculpated Brown, and that Miller concealed, suppressed, or destroyed these results.

Brown alleges that Miller's laboratory report "had no scientific basis [and] grossly overstated the results of [the] laboratory results, and violated standard procedures for analyzing blood–semen stains," thus creating a "misleading and materially inaccurate inculpatory serology report" when Miller knew he should have reported that the results were inconclusive. A criminal defendant's due process rights are violated when the government obtains a conviction with testimony that government agents know is false.[12] In Geter v. Fortenberry, we stated that "a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means . . . ."[13] A false or scientifically inaccurate report is equivalent to any other false evidence created by investigators, such as a false police report; as we have stated, there is no reason a government scientific expert "should enjoy immunity greater than that of other investigators."[14] As the First Circuit held, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence . . . ."[15]

---

[12] See Napue v. Illinois, 360 U.S. 264, 269 (1959).

[13] Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988).

[14] Keko v. Hingle, 318 F.3d 639, 644 (5th Cir. 2003).

[15] Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004).

And, as that court explained, the right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier.[16] On facts similar to those in this case, the Tenth Circuit concluded that the laboratory technician was not entitled to qualified immunity for the allegedly false reports made in 1986.[17] We therefore hold that the deliberate or knowing creation of a misleading and scientifically inaccurate serology report amounts to a violation of a defendant's due process rights, and that a reasonable laboratory technician in 1984 would have understood that those actions violated those rights. The district court did not err in denying qualified immunity on this theory.

Brown also alleges that Miller concealed, suppressed, or destroyed lab results that were conclusively exculpatory with respect to Brown. The Supreme Court held in Brady v. Maryland that a criminal prosecutor's failure to disclose exculpatory evidence to a criminal defendant violates a defendant's right to a fair trial.[18] A police officer's deliberate concealment of exculpatory evidence violates this same right, and can give rise to liability under § 1983.[19] By 1967, a public official's concealment of exculpatory evidence was a constitutional violation in this circuit.[20] Therefore, the law was sufficiently clear in 1984 that a state crime lab technician would have known that suppression of exculpatory

---

[16] See id. at 45 (citing Napue, 360 U.S. at 269).

[17] Pierce v. Gilchrist, 359 F.3d 1279, 1298-1300 (10th Cir. 2004).

[18] See Brady v. Maryland, 373 U.S. 83, 86-87 (1963).

[19] See Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988).

[20] See Burge v. Parish of St. Tammany, 187 F.3d 452, 480 n.11 (5th Cir. 1999) (citing Luna v. Beto, 391 F.2d 329, 332 (5th Cir. 1967)) (holding that "concealing exculpatory evidence by police officers" was a constitutional violation in this circuit by 1967).

blood test results would violate a defendant's rights. Miller does not argue otherwise. We therefore hold that the district court did not err in denying the qualified immunity defense on this theory.

B

Section 1985(3) prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."[21] Brown alleged in his complaint and reply that Miller overstated results and concealed exculpatory results in furtherance of a conspiracy with the other investigating police officers in order to arrest and convict Brown because of his race. In his reply brief, Brown alleged specific facts that would either directly or inferentially support his claims, including: the rape victim was white and Brown is black; that a police officer wrote to Miller that the suspect was a "young Black Male" and had been identified via line-up; that Miller created a false and misleading lab report positively identifying Brown as the rapist; that Miller suppressed exculpatory test results; and that Miller and the other officers were motivated by racial animus against Brown.

On appeal, Miller argues only that Brown failed to sufficiently plead a § 1985 cause of action. He never argues that he is entitled to qualified immunity even if the allegations, including conspiracy and racial animus, are true. Miller's argument about the § 1985 claim is therefore merely an attack on the district court's denial of his motion to dismiss for failure to state a claim. In this interlocutory appeal, we have jurisdiction only to consider the question whether Miller is entitled to qualified immunity as a matter of law. We do not have

---

[21] 42 U.S.C. § 1985(3).

jurisdiction to review the simple denial of a motion to dismiss for failure to state a claim.[22] We therefore dismiss this portion of Miller's appeal.

C

Finally, we will address Brown's state law claims. Our jurisdiction to review denials of motions to dismiss on the basis of qualified immunity is procedural, and derives from 28 U.S.C. § 1291 rather than from substantive federal law.[23] Because federal courts use federal procedure even when applying state law, we give interlocutory review to denials of motions to dismiss state law claims on the basis of qualified immunity, regardless of whether state courts, applying their own procedure, would do the same.[24] In evaluating a motion to dismiss a state claim on the grounds of qualified immunity, federal courts must apply the state's substantive law of qualified immunity.[25] But Miller has not argued that he has qualified immunity against the state law claims under the Louisiana law of qualified immunity. He argues only the federal law of qualified immunity in his motions to dismiss before the district court and in his appellate briefs. Accordingly, he has waived any assignments of error regarding the denial of his motion to dismiss the state law claims on the basis of qualified immunity.

*       *       *

For these reasons, we AFFIRM IN PART, DISMISS IN PART, and REMAND for further proceedings.

---

[22] See Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005).

[23] See Johnson v. Fankell, 520 U.S. 911, 921 (1997) (holding that state courts need not provide interlocutory review of denials of motions to dismiss on the basis of qualified immunity, even for federal claims).

[24] Sorey v. Kellett, 849 F.2d 960, 961-63 (5th Cir. 1988).

[25] Id.