# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-20766

United States Court of Appeals
Fifth Circuit

**FILED**
March 12, 2018

Lyle W. Cayce
Clerk

JOSEPH COTROPIA,

Plaintiff - Appellant

v.

MARY CHAPMAN, Only in her Individual Capacity; TEXAS MEDICAL BOARD; MEMBERS OF THE TEXAS MEDICAL BOARD; MICHAEL ARAMBULA; JULIE ATTEBURY; DAVID BAUCOM; FRANK DENTON; JOHN D. ELLIS; CARLOS GALLARDO; JOHN R. GUERRA; SCOTT HOLIDAY; MARGARET MCNEESE; ALLAN N. SHULKIN; ROBERT SIMONSON; WYNNE SNOOTS; KARL SWANN; PAULETTE SOUTHARD; SUVRENDA K. VARMA; STANLEY WANG; TIMOTHY WEBB; GEORGE WILLEFORD, III, Only in his Official Capacity; MARI ROBINSON, Executive Director, Texas Medical Board, Only in her Official Capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-742

Before KING, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20766

Plaintiff–Appellant Joseph Cotropia initiated this action under 42 U.S.C. § 1983 against Defendants–Appellees Texas Medical Board ("TMB"), TMB members in their official capacities, TMB Executive Director Mari Robinson in her official capacity, and TMB investigator Mary Chapman in her individual capacity. He alleged that Chapman violated the Fourth Amendment by conducting a warrantless search and seizure of records in his office. He also alleged that TMB, TMB members, and Robinson violated the Fourth Amendment by training TMB employees to conduct warrantless searches. The defendants filed a motion to dismiss. The district court then dismissed all of Cotropia's claims with prejudice based on qualified immunity and sovereign immunity. We AFFIRM with respect to the claims against TMB, TMB members, and Robinson, but we REVERSE and REMAND with respect to the claim against Chapman.

## I.

On November 20, 2014, the Texas State Office of Administrative Hearings ("SOAH") issued findings against Cotropia. SOAH found that Cotropia had violated numerous provisions of the Texas Administrative Code applicable to the practice of medicine in Texas while working at two pain management clinics. Based on this, TMB staff proposed a Final Order that revoked Cotropia's license to practice medicine. At a board meeting on February 13, 2015, TMB adopted SOAH's findings and the Final Order of license revocation.

Subsequently, on March 27, 2015, Chapman, a TMB investigator, traveled to an office located at 779 Normandy Street, Houston, Texas, to serve a TMB subpoena for Cotropia's patients' medical records.[1] Cotropia alleged the

---

[1] According to Cotropia's complaint, Chapman was accompanied by an "unknown male," who was described by Cotropia's attorney at the motion to dismiss hearing as "a DEA agent." Up to this point, no evidence has been offered to that effect.

2

No. 16-20766

following facts in his complaint: Betty Spaugh, the office's receptionist, allowed Chapman to enter. After entry, Chapman handed Spaugh the subpoena and insisted that Spaugh give her the records. Spaugh refused and told Chapman that she was not the custodian of the records. Over Spaugh's objection, Chapman then removed and copied documents from the front desk of the office. Some of these documents were financial records; others contained patients' names and telephone numbers. At some point, someone at the office contacted a law enforcement officer. After the officer consulted his superiors and an attorney, he directed Chapman to leave the office.

On March 21, 2016, Cotropia initiated this action under 42 U.S.C. § 1983 against TMB, TMB members in their official capacities, TMB Executive Director Robinson in her official capacity, and Chapman in her individual capacity. Cotropia alleged that Chapman violated his rights under the Fourth Amendment by conducting a warrantless search and seizure of documents. He also alleged that TMB, TMB members, and Robinson violated his rights by training TMB employees to conduct warrantless searches of medical offices.

On June 9, 2016, the defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argued, among other things, that (1) Cotropia lacked standing to assert a claim for injunctive relief; (2) sovereign immunity barred Cotropia's claims against TMB and his official-capacity claims; and (3) Chapman was entitled to qualified immunity. Specifically, the defendants contended that Chapman was within the scope of her authority to execute a TMB subpoena, citing Texas Occupations Code § 153.007 and 22 Texas Administrative Code § 179.4(a). On June 15, 2016, Cotropia filed an amended complaint with no major changes. On June 28, 2016, the defendants filed an amended motion to dismiss, making the same arguments as in their June 9 motion to dismiss. The district court held a hearing on November 16, 2016. It then dismissed all of Cotropia's claims with

prejudice relying on the qualified and sovereign immunity defenses. Cotropia timely appealed.

## II.

As an initial matter, we note that Cotropia failed to raise any arguments about the viability of his claims against TMB, TMB members in their official capacities, and Robinson in her official capacity in his opening brief. Thus, these arguments are forfeited. *See CenturyTel of Chatham, LLC v. Sprint Commc'ns Co., L.P.*, 861 F.3d 566, 573 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 669 (2018). Accordingly, we address only whether the district court erred in dismissing Cotropia's claim against Chapman in her individual capacity based on qualified immunity.

We review a district court's grant of a motion to dismiss based on qualified immunity de novo. *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013) (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "We accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Id.* at 638 (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012)). Dismissal is appropriate when the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Qualified immunity "is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). Qualified immunity shields government officials from damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

No. 16-20766

(2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Cotropia has met his qualified immunity burden here. He has alleged sufficient facts to show that Chapman—by taking documents from his office over Spaugh's objection—violated the clearly established right to an opportunity to obtain precompliance review of an administrative subpoena before a neutral decisionmaker. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of these exceptions is the administrative search. *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015); *Camara v. Mun. Ct. of City & Cty. of S.F.*, 387 U.S. 523, 534 (1967). The administrative search is a search that serves a "'special need' other than conducting [a] criminal investigation[]." *Patel*, 135 S. Ct. at 2452. For example, administrative searches may be used to "ensure compliance with [] recordkeeping requirement[s]." *Id.*

"[A]bsent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* (first citing *See v. City of Seattle*, 387 U.S. 541, 545 (1967); then citing *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984)). "[A]dministrative subpoenas are [] one way in which an opportunity for precompliance review can be made available." *Id.* at 2454. "[A]lthough

5

No. 16-20766

[Supreme Court] cases make it clear that [an agency] may issue an administrative subpoena without a warrant, they nonetheless provide protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it . . . ." *Lone Steer*, 464 U.S. at 415. "[W]hile the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See*, 387 U.S. at 544–45.

*See* and *Lone Steer* make it clear that, prior to compliance, Cotropia was entitled to an opportunity to obtain review of the administrative subpoena before a neutral decisionmaker.[2] Cotropia has pleaded facts that show no such opportunity was provided here. Spaugh, who was on the premises, expressly told Chapman that she was not the custodian of the records. Over Spaugh's objection, Chapman took and copied documents from the front desk of the office. As Chapman immediately executed the subpoena after serving it, Cotropia had no opportunity to obtain precompliance review.[3]

Chapman's primary contention with respect to qualified immunity in her briefing to the lower court and on appeal is that she was carrying out her duties

---

[2] Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker. For example, Texas Occupations Code § 153.007(e) states that if "a person fails to comply with a [TMB] subpoena," then TMB "may file suit to enforce the subpoena." In this scenario, a court can, prior to compliance, determine whether the subpoena is valid. We also note that Texas law has provisions regarding compliance with subpoenas in urgent circumstances. *See, e.g.*, 22 Tex. Admin. Code § 179.4(a).

[3] When TMB allows more time for compliance with a subpoena, the person to whom the subpoena is directed can, for example, seek a protective order in Texas state court. *See, e.g.*, *Allibone v. Freshour*, No. 03-17-00357-CV, 2017 WL 5663607, at *2 (Tex. App.—Austin Nov. 21, 2017, pet. filed). In this scenario, similar to a situation where TMB files suit to enforce a subpoena, a court can determine whether the subpoena is valid prior to compliance.

by executing the subpoena in accordance with TMB's subpoena authority.[4] This argument, at least in its present form, is unavailing. Chapman has proffered only two sources of legal authority in support of TMB's subpoena power: Texas Occupations Code § 153.007 and 22 Texas Administrative Code § 179.4(a). TMB has the authority by statute to "issue a subpoena or a subpoena duces tecum to compel the attendance of a witness and the production of books, records, and documents." Tex. Occ. Code § 153.007(a). The implementing regulation states:

> Upon the request by the board or board representatives, a licensee shall furnish to the board copies of medical records or the original records within a reasonable time period, as prescribed at the time of the request. "Reasonable time," as used in this section, shall mean fourteen calendar days or a shorter time if required by the urgency of the situation or the possibility that the records may be lost, damaged, or destroyed.

22 Tex. Admin. Code § 179.4(a). The authority that has been cited to us does not expressly permit TMB investigators to take the subpoenaed records by force. In fact, the cited statute states that if "a person fails to comply with a [TMB] subpoena," then TMB "may file suit to enforce the subpoena." Tex. Occ. Code § 153.007(e). Chapman points to § 179.4(a) as a source of authority that requires licensees to furnish medical records on short notice, but that is allowed only "if required by the urgency of the situation or the possibility that the records may be lost, damaged, or destroyed." 22 Tex. Admin. Code § 179.4(a). Chapman did not explain to the district court, and has not explained to us, why the situation was urgent or why the records were unsafe. Moreover, Chapman has not made clear (on the arguments that she has provided thus

---

[4] We recognize that there are statutory and regulatory provisions that grant TMB inspection authority in certain circumstances (for example, Texas Occupations Code § 168.052 and 22 Texas Administrative Code § 195.3(b) for pain management clinics), but Chapman has not argued that these provisions are sources of authority under which she operated. Thus, we do not consider them.

far) whether § 179.4(a) applies to this situation at all, as Cotropia was not a "licensee" at the time of Chapman's actions.

Chapman attempts to distinguish *See* and *Lone Steer* by arguing that Cotropia was not subject to penalties for refusing to comply with the subpoena. This contention is unmeritorious. Generally, when "an administrative agency subpoenas books or records, the agency itself may not force compliance by the levy of a fine or imprisonment. . . . Rather, the agency petitions the court for an order forcing compliance, which results in an adversary proceeding where objections by the affected individual may be interposed." 5 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.1(d) (5th ed. 2012). The existence of penalties for noncompliance may be a condition sufficient to "create[] an intolerable risk that [administrative inspections] authorized . . . will exceed statutory limits, or be used as a pretext to harass" business owners. *Patel*, 135 S. Ct. at 2452–53. But penalties for noncompliance are not necessary for a constitutional violation.

There are no automatic penalty provisions related to fines or jail time for noncompliance with a TMB subpoena. *See Allibone v. Freshour*, No. 03-17-00357-CV, 2017 WL 5663607, at *6–7 (Tex. App.—Austin Nov. 21, 2017, pet. filed). However, TMB is the "primary means of licensing, regulating, and disciplining physicians" in Texas. Tex. Occ. Code § 151.003(2). "The [Texas] legislature has empowered the Board to make and execute public policy, regulating the practice of medicine by means of rules, appointments, lawsuits, examinations and investigations, reports and publications, licensing practitioners, and disciplining them through informal proceedings and contested-case adjudications." *Dolenz v. Tex. State Bd. of Med. Exam'rs*, 981 S.W.2d 487, 489 (Tex. App.—Austin 1998, no pet.). TMB has considerable authority effectively to penalize physicians if they do not comply when subpoenas are served. *See, e.g.*, Tex. Occ. Code § 160.009(b) (stating that failure

No. 16-20766

to comply with a subpoena issued under Tex. Occ. Code § 153.007 "constitutes grounds for disciplinary action against the person" subject to the subpoena). At the time of Chapman's actions, Cotropia was not a licensee. But, as Chapman recognized at oral argument, Cotropia could challenge the revocation of his license or reapply for his license. Both of these actions are under the purview of TMB. *See, e.g.*, Tex. Occ. Code § 151.003(2) (TMB is the "primary means of licensing . . . physicians"); *id.* §§ 155.001–155.152 (provisions on licensure). The purpose of the "opportunity for precompliance review" is to "alter[] the [power] dynamic" between the investigators and individuals who are subject to administrative inspections, thereby "reduc[ing] the risk" that investigators use these inspections "as a pretext to harass" these individuals. *Patel*, 135 S. Ct. at 2454.

At oral argument, Chapman contended that physicians' medical practices constitute a closely regulated industry and that the regulatory scheme TMB has in place provides a constitutionally adequate substitute for a warrant. *See New York v. Burger*, 482 U.S. 691 (1987); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000).[5] But she did not make this argument in her appellate brief, or before the district court in her motion to dismiss or at the hearing on that motion. As such, the district court did not have an opportunity to make determinations as to whether physicians' medical practices indeed constitute a closely regulated industry and, if so, whether the *Burger* test is met. Thus, we do not address these contentions today.[6] *See* Fed.

---

[5] In *Beck*, the inspection of a dentist's office was conducted in conjunction with a Department of Public Safety ("DPS") agent and pursuant to the Texas Controlled Substances Act ("TCSA"). 204 F.3d at 632, 638. The TCSA expressly gave the investigator and DPS agent authority to conduct an on demand warrantless inspection of the dentist's office. *See id.* at 639. Here, Chapman has not proffered the TCSA or another controlled substances statute as a source of authority for her actions.

[6] We note that TMB and TMB employees implicated in other cases have made such arguments. *See, e.g.*, Brief of Respondent–Appellee at 21–33, *Zadeh v. Robinson*, No. 17-

No. 16-20766

R. App. P. 28(b); *CenturyTel*, 861 F.3d at 572–73; *Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010).

In her appellate brief, Chapman merely asserts that qualified immunity should be granted because it was Cotropia's burden to show that physicians' offices are not closely regulated. We reject this assertion. While "we sometimes short-handedly refer to only one party's burden, the law [with respect to the qualified immunity defense] is that both bear a burden." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). The defendant must first "plead his good faith and establish that he was acting within the scope of his discretionary authority." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (quoting *Salas*, 980 F.2d at 306). Next, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Id.* (quoting *Salas*, 980 F.2d at 306). In showing that the defendant's actions violated clearly established law, the plaintiff need not rebut every conceivable reason that the defendant would be entitled to qualified immunity, including those not raised by the defendant.

The parties dispute whether there was consent. A search is constitutional if there is consent. *See Patel*, 135 S. Ct. at 2452. Under the Fourth Amendment, consent must be given voluntarily and by a person who has the ability to furnish valid consent. *See United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). Cotropia has alleged in his complaint that Spaugh refused to give Chapman the records listed in the administrative subpoena and told Chapman that she was not the custodian of the records. Thus, as we must accept these pleaded facts as true, we cannot find the search constitutional based on consent.

---

50518 (5th Cir. Nov. 9, 2017). As our decision does not address the closely regulated industry issue, it does not speak to the merits of that issue in these other cases.

No. 16-20766

In sum, up to this point, Cotropia's claim against Chapman in her individual capacity is not barred by qualified immunity. We emphasize that our holding is narrow, constrained by the alleged facts and proffered briefing. The qualified immunity determination is made with respect to the "defendant's circumstances." *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) (collecting cases). The circumstances, as alleged here, involve a TMB investigator's execution of an administrative subpoena—without consent— which may be outside of the scope of the TMB's subpoena authority. Finally, we note that, on remand, discovery may reveal that the actual facts do not amount to a constitutional violation.

## III.

For the foregoing reasons, we AFFIRM with respect to claims against TMB, TMB members, and Robinson. We REVERSE with respect to the claim against Chapman and REMAND for further proceedings.

11