# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50125

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2019

Lyle W. Cayce
Clerk

MARIA RAMIREZ, as Representative of
 the Estate and Statutory Death Beneficiary of Daniel Antonio Ramirez;
PEDRO RAMIREZ, as Representative of
 the Estate and Statutory Death Beneficiary of Daniel Antonio Ramirez,

> Plaintiffs–Appellees,

versus

RUBEN ESCAJEDA, JR.,

> Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Government officials are often entitled to qualified immunity ("QI") from liability for civil damages for performing their discretionary duties. *See, e.g.*, *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). And when a district court denies QI, we may immediately review the denial. *Rich v. Palko*,

No. 18-50125

No. 18-40415, 2019 U.S. App. LEXIS 9856, at *7 (5th Cir. Apr. 3, 2019).  But "we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to [QI] on a given set of facts."  *Id.* at *7−8 (alteration in original, citation omitted).  We may not "review the simple denial of a motion to dismiss for failure to state a claim." *Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008).  Because the defendant here has abandoned the former and presses only the latter, we dismiss the appeal.

## I.

Maria Ramirez called 911 the evening of June 23, 2015, saying that her son Daniel was threatening to hang himself and needed help.  Maria insists that she "did not tell dispatch that [Daniel] had a weapon because he did not."  Ruben Escajeda, Jr., an El Paso Police Department officer, responded to the call, which he maintains was "a call-out regarding a suicidal subject with a weapon."  He arrived at the Ramirezes' house and went to the backyard to look for Daniel.

It was dusk when Escajeda arrived, and the parties dispute exactly what he was able to see.  The Ramirezes allege that Escajeda "immediately saw Daniel in the process of hanging himself from a basketball net."  But "Daniel was clearly still alive," they maintain, and "was grabbing the rope around his neck and touching the ground with his tiptoes—trying to save his own life."  The Ramirezes continue that "[t]here were sufficient lighting conditions for Escajeda to observe that Daniel was alive," that his hands were on the basketball net, that he had no weapon, and that he "was not a threat."  Escajeda counters that he saw Daniel but "was barely able to make out the deceased through the near dark" and could not see that Daniel was attempting to hang himself.

Whatever the lighting conditions allowed him to see, Escajeda contends that he repeatedly asked Daniel to show his hands.  And when Escajeda was

2

No. 18-50125

"unable to see . . . the subject's hands" "after multiple demands," he warned Daniel "that he would tase him if he did not raise his hands." Because Escajeda still could not see Daniel's hands, "he deployed his taser." Escajeda insists that even though he used the taser because he did not see Daniel raise his hands, he "was unable to see that [Daniel] was hanging himself."

The Ramirezes allege that the taser hit Daniel in his chest and abdomen and that his body immediately went limp. Then Escajeda approached Daniel and discovered that he "was hanging himself during the encounter." Escajeda removed Daniel from the basketball net and began CPR. Daniel was transported to a hospital and soon pronounced dead. Police did not recover a weapon.

Maria and her husband Pedro sued Escajeda in his personal capacity under 42 U.S.C. § 1983,[1] alleging that "use of a taser was not necessary nor justified" and was "an objectively unreasonable and excessive amount of force" in violation of their son's Fourth and Fourteenth Amendment rights. Escajeda moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting QI and stressing that plaintiffs had not met the plausibility standard for pleading. The district court denied the motion, holding that Escajeda was not entitled to QI based on well-pleaded facts in the complaint.

## II.

An officer sued under § 1983 may claim QI, and once he does, the plaintiff must rebut by establishing (1) that the officer "violated a federal statutory or constitutional right" and (2) that "the unlawfulness of the[] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). If a defendant raises QI and the district court

---

[1] The Ramirezes also sued the police department, but it is not a party to this appeal.

No. 18-50125

denies it, we have jurisdiction on interlocutory appeal to review the denial *de novo*. *Brown*, 519 F.3d at 236. But our review is "restricted to determinations of questions of law and legal issues." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (cleaned up). "[W]e do not consider the correctness of the plaintiff's version of the facts." *Id.* (internal quotation marks and citation omitted).

## III.

Though Escajeda styles this appeal as a challenge to the denial of QI, he makes no attempt to show that, taking well-pleaded facts as true, he did not violate Daniel's clearly-established constitutional rights. "Questions posed for appellate review but inadequately briefed are considered abandoned." *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993). By presenting but failing to brief it, Escajeda has abandoned the issue whether the district court erred in denying QI.[2]

And Escajeda raises no other issue that we may consider in this limited appeal. His sole contention is that the district court erred in denying the motion to dismiss because the Ramirezes have not pleaded "a claim [to] relief that is plausible on its face." *Club Retro*, 568 F.3d at 194 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). He attacks the credibility of the facts pleaded, averring that "there were no witnesses present during the incident," so "[t]he Plaintiffs have no idea what [he] saw, heard, felt, or thought." He concludes by urging us to "determine whether the Plaintiffs [sic] allegations move across the line from possible to plausible based entirely on supposition and make-believe."

---

[2] That abandonment is only for purposes of this appeal. Nothing constrains Escajeda from asserting QI at an appropriate, later stage of this litigation, including any motion for summary judgment or trial.

4

No. 18-50125

That is "merely an attack on the district court's denial of his motion to dismiss for failure to state a claim." *Brown*, 519 F.3d at 238. We lack jurisdiction to consider that challenge at this early facet of the proceedings. *Id.*[3]

Escajeda insists that in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court rejected the idea that a reviewing court lacks jurisdiction to consider the sufficiency of the pleadings in an interlocutory appeal from the denial of QI. He misses the mark. We may review "whether the facts pleaded establish" "a violation of clearly-established law." *Id.* at 673. That is a legal issue fully within our jurisdiction on interlocutory appeal. But *Iqbal* does not allow us to question the credibility of the facts pleaded, which is what Escajeda asks us to do. *Iqbal*, instead, tells us to "assume the[] veracity" of "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The appeal is DISMISSED for want of jurisdiction.[4]

---

[3] *See also Burnside v. Kaelin*, 773 F.3d 624, 626 n.1 (5th Cir. 2014) ("We have no jurisdiction over arguments unrelated to the denial of [QI] or over factual disputes . . . ."). Escajeda conspicuously fails to address *Brown*, in which the defendant official ostensibly appealed the denial of QI but contended only that the plaintiff had failed sufficiently to plead a 42 U.S.C. § 1985 claim. *See Brown*, 519 F.3d at 238. We held that we lacked jurisdiction to decide the sufficiency of the pleadings. *Id.*

[4] Because we have no jurisdiction to entertain the appeal, we have no authority to hint as to what is the proper outcome of this litigation. Nothing in this opinion should be construed to do so.