# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2024

**Lyle W. Cayce**
Clerk

No. 23-20098

Shanetta Guidry Lewis,

*Plaintiff—Appellee*,

*versus*

Devin Inocencio; Victor Villarreal; Peter Carroll; Shaun Houlihan,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-844

_____

Before Richman, *Chief Judge*, Stewart, *Circuit Judge*, and Scholer, *District Judge*.[*]

Per Curiam:[*]

On February 7, 2022, Houston Police Department officers attempting to execute an arrest warrant for aggravated robbery with a deadly weapon fatally shot Charion Lockett. Lockett's mother, Plaintiff-Appellee Shanetta Guidry Lewis, sued the Houston Police Department police officers involved,

_____

[*] District Judge in the Northern District of Texas, sitting by designation.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20098

alleging that officers used excessive force in violation of Lockett's Fourth Amendment rights. The officers asserted qualified immunity and moved to dismiss. The district court denied their motions and allowed the claims against the officers to proceed. The officers timely appealed, arguing that they are entitled to qualified immunity on the excessive-force claims. We AFFIRM the district court's judgment.

## I.   FACTS AND PROCEDURAL HISTORY

The events at issue in this case arise from the Houston Police Department's investigation of an armed robbery that took place in or around November 2021. The robbery victim identified Lockett and an unknown male as the perpetrators. Subsequently, the investigating officers secured a warrant for Lockett's arrest. On February 7, 2022, at around 9:30 a.m., an unidentified officer called both Lockett and Lewis and informed them of the warrant for Lockett's arrest. Either Lockett or Lewis told the officer that Lockett intended to retain an attorney and would turn himself in later that day.

Approximately one hour later, police officers Devin Inocencio, Victor Villareal, Peter Carroll, and Shaun Houlihan arrived at Lockett's residence. Inocencio was in plain clothes and was in an unmarked red car. Inocencio pulled up near Lockett, opened his car door, and pointed his gun at Lockett without saying a word. Lewis alleges that at least one officer, believed to be Inocencio, began shooting at Lockett while Lockett sat in his parked vehicle. The other officers shot Lockett in the back as he attempted to run. At no point did any of the officers identify themselves as police officers or otherwise "indicat[e] they were police," inform Lockett he was under arrest, or tell Lockett to put his hands up. According to Lewis, Lockett did not assault anyone. Lewis does not concede that Lockett had a gun but pleads that Lockett had a concealed carry license and that if Lockett did point or shoot a gun, he did so because he feared for his life. Lockett died at the scene.

No. 23-20098

In March 2022, Lewis filed a wrongful-death lawsuit against the City of Houston and the officers involved. Lewis asserted a Fourth Amendment excessive-force claim against Inocencio, Villareal, Carroll, and Houlihan pursuant to 42 U.S.C. § 1983. The officers moved to dismiss Lewis's Fourth Amendment claims on qualified-immunity grounds. The district court denied the officers' motions to dismiss as to the excessive-force claims. The officers filed an interlocutory appeal.

On appeal, the officers argue that the district court erred when it found that Lewis pleaded sufficient facts to overcome the qualified-immunity defense. We conclude that the district court did not err in allowing Lewis's excessive-force claims against the officers to proceed.

## II.    JURISDICTION

We have jurisdiction to review the denial of a motion to dismiss based on qualified immunity as a collateral order subject to immediate review. *Hicks v. LeBlanc*, 81 F.4th 497, 502 (5th Cir. 2023) (citing *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)); *Waller v. Hanlon*, 922 F.3d 590, 597–98 (5th Cir. 2019) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). "We possess . . . jurisdiction to review a district court's determination at the pleadings stage that a plaintiff has alleged sufficient facts to overcome a qualified-immunity defense." *Waller*, 922 F.3d at 598 (citation omitted). We consider whether the district court erred in concluding as a matter of law that the officers are not entitled to qualified immunity, but we cannot consider "the correctness of the plaintiff's version of the facts." *Hicks*, 81 F.4th at 502 (quoting *Ramirez v. Escajeda*, 921 F.3d 497, 499–500 (5th Cir. 2019)).

## III.    STANDARD OF REVIEW

We review the denial of a Rule 12(b)(6) motion to dismiss *de novo*. *Id.* (citation omitted). We accept all well-pleaded facts in the complaint as true

3

and construe all reasonable inferences in the light most favorable to the plaintiff. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (citation omitted). "But 'we do not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement.'" *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (quoting *Anokwuru v. City of Houston*, 990 F.3d 956, 962 (5th Cir. 2021)). "To survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022)).

When a defendant raises a qualified-immunity defense at the pleading stage, the plaintiff must plead facts that "if proved, would defeat [the] claim of immunity." *Id.* at 285 (alteration in original) (quoting *Waller*, 922 F.3d at 599). However, the Rule 12(b)(6) pleading standard remains the same. *Id.* (citation omitted). "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983[,] and would overcome their qualified immunity defense." *Id.* (alteration in original) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).

## IV.  ANALYSIS

"The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To defeat a qualified-immunity defense, the plaintiff must plead facts showing "(1) that [the defendants] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)).

No. 23-20098

We begin with the first prong of the qualified-immunity analysis. Lewis claims that the officers' shooting of Lockett violated Lockett's Fourth Amendment right to be free from excessive force during a seizure. To state an excessive-force claim, Lewis must show that Lockett "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Allen*, 65 F.4th at 744 (alterations in original) (quoting *Cloud*, 993 F.3d at 384). Reasonableness is "judged from the perspective of a reasonable officer on the scene," not "with the 20/20 vision of hindsight." *Cloud*, 993 F.3d at 384 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). And the standard is an objective one, focusing on "the facts and circumstances confronting" the officers, "without regard to their underlying intent or motivation." *Id.* (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). We consider several factors in determining the reasonableness of force, paying "careful attention to the facts and circumstances of each particular case": (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest. *Graham*, 490 U.S. at 396 (citation omitted). Where, as here, deadly force has been deployed, the "threat-of-harm factor typically predominates." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021).

There is no dispute that the crime at issue—armed robbery—is a serious felony, and Lewis alleges that Lockett was fleeing when the second round of shots was fired. But officers may not shoot a fleeing felony suspect if the suspect does not pose an immediate threat. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Thus, the threat-of-harm factor predominates in this case.

Accepting all well-pleaded facts as true and construing all reasonable inferences in the light most favorable to Lewis, the officers arrived at Lockett's house without identifying themselves or issuing any instructions or

warnings, and at least one officer immediately drew his gun and pointed it at Lockett. When the officers first used deadly force, Lockett was sitting in a parked car and the officers had not identified themselves as police or issued any warnings or instructions. As such, it is reasonable to infer that Lockett was not resisting arrest or refusing to comply with police commands. Officers then continued firing, shooting Lockett in the back as he attempted to run away. Lockett "did not assault anyone" as these events unfolded.

These facts are sufficient to establish that, when he was sitting in his car, Lockett did not pose an immediate threat to the officers' or others' safety to justify the use of deadly force without warning. *See Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (en banc) (denying qualified immunity where the decedent was armed but "posed no threat to the officers or others to support firing without warning"). Similarly, Lockett did not pose an immediate threat when he was running away, with his back to the officers. *See Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) ("Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer." (citation omitted)).

On appeal, the officers raise two principal issues with the district court's recitation of the facts. First, the officers argue that the conclusions that Lockett posed no threat to anyone and that the officers fired without cause are improper interpretations of Lewis's allegations. The officers contend that Lewis's actual allegation—that Lockett was sitting in his parked vehicle when officers began firing—is insufficient on its own to give rise to such inferences. According to the officers, Lewis was required to plead additional facts, such as whether Lockett's hands were in plain sight. This argument is unavailing. Even when a defendant puts forth a qualified-immunity defense, the pleading standard is not heightened. *Allen*, 65 F.4th at 743. At this stage, Lewis has satisfied her burden to plead facts that "if proved, would defeat [the] claim of immunity." *Guerra*, 82 F.4th at 285

(alteration in original) (quoting *Waller*, 922 F.3d at 599). The factual "allegations need 'not conclusively establish' the plaintiffs' theory of the case." *Waller*, 922 F.3d at 600 (quoting *Doe v. Robertson*, 751 F.3d 383, 389 (5th Cir. 2014)). "For now, it suffices that" Lewis's allegations "are not 'naked assertions devoid of further factual enhancement.'" *Id.*

Second, focusing on the allegation that Lockett had a concealed carry license and relying on a single line of speculation in Lewis's pleadings, the officers assert that Lockett was in fact holding a gun or, at least, armed. Lewis never alleges that Lockett was armed, pointed a gun, or fired at officers. Instead, Lewis provides a hypothetical alternative and contends that if Lockett pointed or fired a gun, he did so out of fear for his life. This hypothetical statement is permissible under Federal Rule of Civil Procedure 8(d)(2). *See Banco Cont'l v. Curtiss Nat'l Bank of Mia. Springs*, 406 F.2d 510, 513 (5th Cir. 1969). The alternative to this hypothetical—that Lockett did not assault anyone by pointing or firing a gun—suffices at this stage. *See Tuttle v. Sepolio*, 68 F.4th 969, 973–74 (5th Cir. 2023) (per curiam) (holding that the plaintiffs' excessive-force claim overcame qualified immunity where the plaintiffs alleged that "[a]ny firing done by [the decedent] . . . was done purely in defense of himself and his wife"). Construing all reasonable inferences in the light most favorable to Lewis, the pleadings establish that Lockett was merely sitting in his car and later running from gunfire when the officers fatally shot him. Lewis adequately pleaded that the shooting was objectively unreasonable and clearly excessive.

We turn next to the second prong of the qualified-immunity analysis. To survive the motions to dismiss, Lewis must "plead enough to allege that the constitutional violation was clearly established at the time of the shooting." *Allen*, 65 F.4th at 745 (citing *Waller*, 922 F.3d at 599). A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)

(per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff bears the burden to demonstrate that clearly established law proscribes the defendant's conduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citation omitted).

A plaintiff may demonstrate clearly established law by "identify[ing] a case" or "body of relevant case law" in which a violation of the Constitution was found under factually similar circumstances. *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)). Before analyzing whether the law is clearly established, "we must frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. Here, the question is whether police officers violate the Fourth Amendment when they fire without warning upon a non-threatening suspect who is either sitting in a stationary car or running away.

Lewis identifies two excessive-force cases from this circuit that demonstrate that this right was clearly established at the time of the alleged misconduct. In *Baker v. Putnal*, we reversed a district court's grant of summary judgment on qualified-immunity grounds where an officer shot and killed a man sitting in a parked car. 75 F.3d 190, 198 (5th Cir. 1996). A gun was later found in the decedent's truck, but the parties disagreed about whether the decedent was holding it or pointing it at the officer. *Id.* at 193, 198. The officer maintained that he issued a warning before shooting and that the decedent aimed a pistol at him, while the plaintiff's witnesses testified that the officer did not call out a warning and that the decedent merely "[moved] to turn and face" the officer before the officer pulled the trigger. *Id.* at 198. We held that these disputes raised issues of material fact as to whether the officer acted reasonably. *Id.*

No. 23-20098

In *Cole*, we affirmed a district court's denial of summary judgment on qualified-immunity grounds where officers shot and killed a suicidal teenager who was holding a gun to his head. 935 F.3d at 453, 455. Because the district court found that, among other things, the decedent had not been facing the officers or pointing a gun at them, we concluded that the facts did not "support firing without warning." *Id.* at 453. We held that *Baker* clearly established that using deadly force without provocation and without warning constitutes excessive force.[1] *Id.* at 453–54.

The above-cited precedent provided the officers with fair notice that using deadly force without warning on a non-threatening suspect who was, at different times, sitting in a car and running away was a constitutional violation. Both cases establish that even where a suspect may have a gun, there must still be a threat before use of deadly force is justified. Further, both cases recognize that a failure to warn before firing can influence the threat posed by a suspect and, thus, the reasonableness of the officer's use of deadly force. *Baker*, 75 F.3d at 198; *Cole*, 935 F.3d at 453.

As for the shots fired after the initial round, we also consider the fact that "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Crane*, 50 F.4th at 466 (quoting *Lytle v. Bexar County*, 560 F.3d 404, 417 (5th Cir. 2009)). This conclusion applies both to a felon fleeing on foot and to one fleeing in a vehicle. *Id.* (citations omitted).

---

[1] We also stated that the officers' alleged conduct was prohibited under the "obvious case" approach, which is available where "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Cole*, 935 F.3d at 453; *Batyukova*, 994 F.3d at 726 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)).

The officers cite several cases upholding the use of deadly force against individuals who were unarmed or facing away from officers. But none of these cases involve the use of deadly force without warning or provocation. For instance, in *Salazar-Limon v. City of Houston*, our decision to affirm the district court's grant of summary judgment on qualified-immunity grounds was based on "the totality of the circumstances," including the plaintiff's resistance to the officer's attempt to handcuff him, "disregard for [the officer's] orders," and sudden reach toward his waistband. 826 F.3d 272, 275, 279 (5th Cir. 2016). Such circumstances are not present here, where the officers did not issue any orders and Lockett was first sitting in his vehicle and then running away.

In *Cloud*, we affirmed the district court's grant of qualified immunity to a police officer who tased and then fatally shot an individual during a traffic stop. 993 F.3d at 381. The circumstances in that case "warranted a reasonable belief that [the decedent] threatened serious physical harm" where the officer fired only after the decedent's revolver discharged into the officer's chest, the officer "had to wrest it from [the decedent's] hands and toss it away," and, thereafter, the decedent still made "a sudden move in the gun's direction." *Id.* at 387.

And in *Manis v. Lawson*, we held that "the act that led [the officer] to discharge his weapon" was the decedent, "in defiance of the officers' contrary orders, reach[ing] under the seat of his vehicle and appear[ing] to retrieve an object that [the officer] reasonably believed to be a weapon." 585 F.3d 839, 845 (5th Cir. 2009). In contrast, Lewis alleges that the officers drove up with one of the officers already pointing a gun at Lockett and, without any verbal warnings or words indicating it was an arrest, shot him as he sat in his parked vehicle and then continued shooting at him as he attempted to flee.

No. 23-20098

Because Lewis sufficiently pleaded facts that, if true, show that the officers violated Lockett's Fourth Amendment rights and because the unlawfulness of the officers' conduct was clearly established at the time of the shooting, the officers are not entitled to qualified immunity at this stage.

## V.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.