J. F. Holt v. The State.

No. 8284.   Decided June 25, 1924.

Rehearing denied October 29, 1924.

1.—Murder—Evidence—Acts of Deceased—When not Admissible.

Where the general reputation of deceased for being a violent and dangerous man has not been put in issue, testimony of a former difficulty of the deceased, not communicated to appellant nor known by him before killing is not admissible.

2.—Same—Evidence—Excluded—Bill of Exception.

Where a question propounded to witness is objected to and the objection sustained, a bill of exception complaining of this action of the trial court cannot set out any fact expected to be elicited by such question, except that which is clearly responsive to the question asked. Trial court should be informed by counsel at the time testimony is excluded what facts are expected to be proven. They must appear to be cogent and material, and no other matter should be embraced in a bill of exception complaining of such exclusion.

3.—Same—Qualifying Bills of Exceptions—After Filing.

It is competent for the court to alter, change or strike out a bill of exceptions, although approved and filed, to correct any error, upon proper notice to the accused or his attorney. This can be done at any time, within the time allowed for the filing of bills of exception. See Cain v. State, 42 Crim. Rep., 210.

Appeal from the District Court of Rains County. Tried below before the Hon. Geo. C. Hall, Judge.

Appeal from a conviction of murder; penalty, ten years confinement in the State penitentiary.

*W. W. Berzette,* and *Emory, Jones & Jones,* for appellant.

*Tom Garrard,* State's Attorney, *Grover C. Morris,* Assistant State's Attorney, and *Clark & Sweeton,* for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Rains County of murder, and his punishment fixed at ten years in the penitentiary.

Appellant shot and killed deceased with an automatic pistol in front of a gate to appellant's yard. He was a tenant on the farm of deceased who had lived in the same house with appellant till about two months before the shooting, at which time he moved away taking most of his household goods but leaving some. He also had cattle in a pasture near said house. Threats by both parties were in evidence. On the

morning of the homicide deceased and three other men went down to look at some cattle in said pasture. They passed near the house and appellant was sitting on the porch. They presently came back and appellant was sitting in the same place. Deceased spoke to appellant and said that he would be there that afternoon to get the rest of his things. Appellant replied that deceased had nothing there except some junk. A State witness said that appellant used the expression "damned junk," but appellant claimed that he made the statement first set out. According to appellant's own admission on cross-examination deceased then said: "I have got some pillows here." We quote from appellant's testimony as given on cross-examination at this point:

"I told Mr. McCord not to dispute my wife's word. When Mr. McCord said he did have pillows there I felt like he was disputing my wife's word and that made me madder. It made me awful mad to feel that he would dispute my wife's word."

State witness Wolfe testified that at this point appellant said: "I am tired of you disputing my wife's word, you damn son-of-a-bitch," and that he stepped toward deceased and began firing and continued until deceased fell. Three shots were fired by appellant. He testified that when deceased said that he had some pillows there, he, appellant, replied, "Mr. McCord, my wife says you haven't got any pillows and don't dispute her word," and that deceased said, "I will show you what I have got" and went for his gun; that he could see the gun of deceased where it stuck out, could see the pistol of deceased, the handle of it, and when deceased went for it he, appellant, began shooting. There is no dispute over the fact that when the body of deceased was raised from where he fell a pistol fell out of his clothes. The men who were with deceased at the time affirm that he made no motion to draw any weapon and that his hands were by his side at the time appellant began shooting, and that at no time did deceased draw or attempt to reach for any pistol.

The issue was thus sharply drawn as to whether deceased made any motion or did any act upon which self-defense could be predicated. If the jury believed the testimony for the defense, there could be no question as to appellant's right to shoot. If they believed the testimony for the State, it was apparently a killing upon malice. The court charged the jury on the presumption arising from the use of a deadly weapon, and that the transaction must be viewed from the standpoint of the accused; that if from his standpoint it reasonably appeared to him that deceased was making an attack or about to make an attack upon him with a deadly weapon, he would have a right to take his life. There was no proof offered that deceased had the reputation of being a violent or dangerous man or one who would execute a threat, nor did appellant in his testimony suggest that he ever heard of any acts of violence of deceased toward any other person.

In this condition of the record by bills of exception Nos. 2 and 3 is presented appellant's complaint of the rejection of the testimony of Mr. and Mrs. Barfield as to the details of a transaction claimed by them to have occurred between them and deceased about April 1, 1922, nearly a year before this killing. Scrutiny of said bills shows that each of said witnesses was asked the question if deceased committed an assault on C. H. Barfield while a tenant on the farm of deceased, and if he had any trouble with deceased during said year, and if so tell the jury about it. The bills further show that to such question and answer thereto the State objected for many reasons, which objection was sustained. Neither bill states that the court was then informed that appellant had been told of such occurrence, or that the court was informed that appellant placed reliance in any way on the proposition that deceased was a dangerous and violent character. Trial courts rule on matters in the form as presented to them and we review their rulings as in the same light. The admission of the details of other acts of violence in no way connected with the transaction involved in a prosecution, but known to the accused and claimed by him to have affected his mind at the time of the instant occurrence, comes somewhat in the nature of an exception to the general rule rejecting testimony of such details,—and those things which make such extraneous transactions admissible, must not only have been made known to the trial court, but when he rejects the evidence it must be here shown that he was made aware of the reason relied on for offering same or upon which he should have admitted it,—else we will uphold his action in rejecting same. It is true that in the bills under consideration it is stated that if permitted the witness would have * * * told at length the occurrence with deceased * * * and would have said that prior to this homicide he had communicated to appellant all the acts and conduct of deceased on said occasion,—but this in no way meets the requirement under discussion. Testimony of the fact that said witness had communicated the occurrence to appellant, was not called for by the question asked, to which alone the objection was made and sustained. Nor can it be said that in fairness the statement in the bills of exception that the witnesses in answer to the question asked would have testified, among other things, that they told appellant of the occurrence,—imports that the court knew or was told of this fact, when he sustained the objection to a question which would appear to call only for a narration of the trouble had between Barfield and deceased. How could the learned trial judge know that the same question also called upon the witness to tell that at some other time and place than that of the trouble, he told appellant of same? The cases cited by appellant go no further than to sustain the proposition that in some cases where deceased has been guilty of extraneous acts of violence which were

known to the accused at the time of the act involved, and are claimed by him to have influenced his action in the premises, these facts may be put before the jury. We are of opinion that the court below did not err in rejecting the testimony of the Barfields in the manner in which it appears from the bills of exception to have been placed before him.

Appellant's bill of exceptions No. 1 complains of the refusal of a continuance, which action of the court would not be erroneous if the qualifications placed on said bill can be considered. By a separate bill is presented appellants exceptions taken to the action of the learned trial judge in placing said qualifications on bill No. 1 after it was filed; it being averred that it was written on the bill after same had been approved and filed and over objection of appellant that same could not be then so qualified. The record shows that the trial term of the court below ended July 16th, and that in the order overruling the motion for new trial ninety days were allowed in which to file bills of exception. Said bill No. 1 was filed September 27th, and the qualification in question was placed on same October 5th, apparently upon full notice to appellant and a hearing. In Cain v. State, 2 Texas Crim. Rep., 210, cited by appellant, Judge Davidson, speaking for this court, said:

"We believe it is competent for the court to alter, change, or strike out a bill of exceptions, although approved and filed, if upon a proper showing the bill appears to be untrue or erroneous. The court had the power, at least during term time, to make a record speak the truth; and if, through mistake or otherwise, a bill of exceptions is shown not to be truthful, or to certify facts and matters which did not occur, the court, upon proper notice to the interested parties, has authority to make the matter appear of record as it actually occurred. This is a very salutary rule for both sides."

When said opinion was written our law required bills of exception to be filed during term time. It is otherwise now, and it is therefore plain, that under this opinion whatever action relative to a bill of exceptions would be legal during term time under the law as it then was, would now be legal if had during the time in which such bill of exceptions might be filed. Applying the reasoning of Judge Davidson to a case in which it was discovered before the expiration of the time that a bill of exceptions might be filed, under the order of the court, that such bill did not speak the truth, or had been changed or was not correct, we have no doubt but that upon proper notice to the accused or his attorneys, and an opportunity to be heard, such bill might be corrected to speak the truth. The qualification of the learned trial judge having been placed upon this bill so as to make it speak the truth within the time allowed for the filing of bills of exception, we think no error was committed in putting the qualification upon the

bill, after it was filed. There is no complaint made of the facts stated in said qualification. There can be no question of the lack of diligence in the effort to procure the absent witnesses, as reflected in said qualification, and the testimony of the deputy district clerk as presented upon the hearing of the motion for new trial seems to make plain the proposition that the application was not bona fide but intended for delay.

The only other bill of exceptions appearing is one taken to the overruling of the motion for new trial, and this under many decisions of our court presents no error. The facts need not be set out at length. They demonstrate the mercy of the jury in giving to the appellant a much lower penalty than might have been justified by the facts.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

HAWKINS, JUDGE.—What has been said by my brother Lattimore in discussing bills of exception 2 and 3 may be supplemented by the statement that it appears from the record that appellant had testified before the Barfields were offered as witnesses; that he nowhere claimed to have heard of any trouble between deceased and the Barfields from them or any one else, and made no pretense that knowledge of any such transaction was operating on his mind at the time of the homicide. In this condition of the record the court was more than justified in excluding the Barfield evidence in the absence of information that they claimed to have told appellant about the trouble when he while testifying had not mentioned it.

### ON REHEARING.

LATTIMORE, JUDGE.—We will not attempt to discuss the rather lengthy motion in detail but will go at once to the merit of the questions presented therein.

When upon a criminal trial a question is asked and an objection made thereto which is sustained, the action of the trial court may be made the subject of a bill of exceptions if desired, but other matters not embraced in a proper answer to such question, and not appearing to have transpired at the time referred to in the question, nor in the transaction inquired about, cannot properly be made a part of the bill of exceptions presenting such complaint.

When such objection to the question is sustained, and the bill shows that part of the expected answer could not have been legitimately given in manner to such question, but that same related to what transpired at another time and place, such unresponsive part of the expected answer cannot be looked to in determining the correctness of the court's ruling unless it clearly appears *aliunde* that the court was then informed of the other matter.

. A statement in the approval of the trial court that the matters and things set out in the bill occurred as therein stated  and that the bill is in all things allowed and approved,—cannot be taken as a certificate that the witness would have stated in his answer things which were not responsive; or that if allowed to answer the question objected to, the witness would have been also allowed to state other things clearly not called for by the question.

There is in this record no bill of exceptions complaining of the court's action in sustaining objection to any question to the Barfields, as to whether they had communicated to appellant the facts regarding any trouble had by them with deceased.  Critical examination of the testimony of appellant himself fails to disclose any statement by him that the Barfields or anyone else had ever told him anything which should cause him to fear deceased, or to believe him a dangerous and violent man; nor did he assert that he believed deceased to be a man of such character at the time of the killing.  The matters to which these observations pertain were fully set out in the original opinion.

The motion for rehearing will be overruled.

*Overruled.*