**Jesse LUNA, Appellant,**

**v.**

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 23813.**

United States Court of Appeals
Fifth Circuit.

July 11, 1967.

---

John J. Browne, Houston, Tex., for appellant.

Lonny F. Zwiener, Asst. Atty. Gen., of Texas, Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellee.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

RIVES, Circuit Judge:

Luna was convicted in the Criminal District Court of Harris County, Texas, of the offense of selling heroin and was sentenced to imprisonment for 25 years. The judgment of conviction was affirmed by the Court of Criminal Appeals of Texas.[1] As shown in the opinion of that court, the sale of the narcotic drug was alleged to have been made to John William Gober, an ex-convict. That opinion details how Gober was the principal witness for the State and his testimony as to effecting the sale was corroborated by officers Hightower and McMannes, who observed him from a distance with field glasses. Luna's application for habeas corpus to the Texas Court of Criminal Appeals was denied without opinion on November 9, 1965. On February 9, 1966 Luna filed his application for habeas corpus in the federal district court. The principal grounds for his application are: (1) The State knowingly permitted the witness Gober to testify falsely. (2) The State knowingly suppressed evidence beneficial to the defendant Luna. (3) The State court at the instance of the prosecuting attorney denied the defendant Luna his right adequately to cross-examine the witness Gober. After a full hearing, the district court entered an able opinion and denied the application for habeas corpus. We reverse.

All three of the grounds for the application are based upon the following parts of the cross-examination of the witness Gober:

"Q. You certainly have no official capacity with the Houston Police Department, do you—are you a police officer?

"A. No sir, I'm not.

"Q. You have no official capacity with them, do you, Gober?

"A. No sir, I do not.

"Q. Are you paid by them?

"A. No sir.

"Q. Now, Gober, you admitted on the stand, in answer to questions, that you have been convicted of the crime of murder without malice in 1955, is that correct?

"A. Yes sir.

"Q. You have been charged * * *

"MR. STOVER: Your Honor, I object to any questions about what this man had been charged with. Convictions are all that he can ask him about as Counsel well knows.

"MR. TUCKER: I want to ascertain the number of charges that was in Harris County, Your Honor.

"THE COURT: Just convictions, please. You know rules.

"MR. TUCKER: Yes, Your Honor.

"MR. TUCKER CONTINUES:

"Q. I ask you if you have been convicted of burglary and felony theft here?

"A. Yes sir.

"Q. What other indictment—have you been under any other indictments?

"MR. STOVER: I object to that, Your Honor, and asked that Counsel be instructed to abandon this line of questioning.

---

1. Luna v. State of Texas, Tex.Crim.App.1965, 387 S.W.2d 896.

"THE COURT: That is sustained.

"MR. TUCKER CONTINUES:

"Q. How long have you been working with or for the Houston Police Department?

"A. I haven't been working with the Houston Narcotics Squad, the Police Department Division, since sometime in July, the middle of July.

"Q. Are you addicted to the use of narcotics?

"A. No, I am not.

"Q. You are not addicted to the use of narcotics?

"A. No sir.

"Q. How many cases have they filed on you—do they have over you right now?

"A. I don't have any pending cases against me.

"Q. How many times have they caught you with narcotics?

"MR. STOVER: I object to that—it would be immaterial.

"THE COURT: That is sustaintained.

"MR. STOVER: Counsel well knows the rules, Your Honor, and I am going to object to his continuing * * *

"THE COURT: Counsel, please pay attention—you know what is admissible, and you know what is not admissible. Please don't ask any more questions along that line.

"MR. TUCKER: Yes sir, Your Honor."

The undisputed facts reveal that when Gober was arrested for a felony—the unlawful possession of narcotics, he was promised by police officers that, if he would cooperate by obtaining evidence against narcotic peddlers, the police offi-cers would "give him whatever help they could with his case." Gober agreed and was released on bond. For several months he assisted the police by purchasing narcotics from peddlers. The appellee admits that at times officers advanced to Gober small sums of money.[2]

Gober testified at the trials of several defendants, including Luna, who were arrested for selling narcotics to Gober. Luna's case was the first to be brought to trial.

Luna's first contention, that the State knowingly permitted Gober to testify falsely, is based principally upon the answers to two questions included in the parts of his cross-examination heretofore quoted. (1) "Q. Are you paid by them [the police officers]? A. No sir." (2) "Q. How many cases have they filed on you—do they have over you right now? A. I don't have any pending cases against me." The district court found that, when Gober gave a negative answer to the question marked (1), it could not be considered perjury. We agree with that finding, but would observe that the deception was no less damaging to Luna because it was unintentional. See Barbee v. Warden, Maryland Penitentiary, 4 Cir. 1964, 331 F.2d 842, 846. However, we need not determine whether that answer alone should call for a reversal, for we further agree with the district court that the more substantial basis for Luna's first contention is Gober's answer to the question marked (2). As found by the district court,

"It is not disputed by the Respondent that this reply was not a correct statement of the facts. Gober had been arrested in July, 1963, and a complaint was filed by officers Hightower and McMannes in a Justice of the Peace Court charging him with possession of narcotics. He was released on $1,000.00 bond. His case had twice been

2. The amounts ranged from $3.00 to $5.00, and one officer testified that considering the number of days Gober spent assisting the police investigators, the sums ad-vanced were not enough to compensate him for the time he was absent from his regular job.

set for examining trial and in each instance continued at the request of one of the arresting officers. The complaint was still pending at the time of Petitioner's trial in November, 1963."

The district court held that "the evidence in this case establishes that the prosecutor, Mr. Stover, had no actual knowledge of the promises made by the police officers * * *," and further that,

"Whether the knowledge of the police officers that the promises had been made to Gober should properly be imputed to the prosecuting attorney under the rationale of the Fourth Circuit in Barbee v. Maryland, 331 F.2d 842 (1964), need not be considered, as it is the conclusion of the Court that, under the facts in the instant case, the false testimony complained of could not in any reasonable likelihood have affected the judgment of the jury. * * *."

Mr. Stover testified positively and under vigorous cross-examination to a complete lack of knowledge of any pending charge against Gober or of any promise made by the police officers. There is no reason to doubt the truthfulness of his testimony.

The police officers who had knowledge of the pending charge against Gober and who had made the promise to him were excluded from the courtroom during Luna's trial because they were to be witnesses. Hence, they did not hear Gober testify that there were no pending cases against him. The prosecuting attorney had not inquired and the police officers had failed to reveal to him their promise to "give him [Gober] whatever help they could with his case" in exchange for his cooperation in obtaining evidence against narcotic peddlers.

█ Nothwithstanding the foregoing circumstances, we think that the State must be held responsible for permitting the witness Gober to testify falsely and for failing to reveal material evidence reflecting upon the credibility of the witness Gober. What was so well said by Chief Judge Sobeloff writing for the Fourth Circuit in Barbee v. Warden, Maryland Penitentiary, 1964, 331 F.2d 842, 846, is directly pertinent to the decision of this appeal:

"Nor is the effect of the nondisclosure neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. If the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State's Attorney but on the court and the defendant. 'The cruelest lies are often told in silence.' If the police silence as to the existence of the reports resulted from negligence rather than guile, the deception is no less damaging.

"The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused. * * *"[3]

██ Of course, the State may not knowingly use false evidence to obtain a conviction.[4] The district court recog-

---

3. See also Evans v. Kropp, E.D.Mich.1966, 254 F.Supp. 218.

4. Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Pyle v. State of Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Napue v. People of State of Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Brady v. State of Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.

nized that principle, but held that "the false testimony complained of could not in any reasonable likelihood have affected the judgment of the jury." Since the district court's decision, and indeed very recently, the Supreme Court has adopted the test "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 decided Feb. 20, 1967.

█ Applying that standard, we have no doubt that the error in this case was not harmless to Luna. Gober was the principal witness, the one to whom the alleged unlawful sale was made. We cannot say beyond a reasonable doubt that, if the jury had been informed of the pending charge against Gober and of the police officers' promise to "give him whatever help they could with his case" in exchange for his cooperation in obtaining evidence against narcotic peddlers, such evidence may have been sufficient to raise in the minds of the jurors a reasonable doubt as to Luna's guilt.

As to Luna's third contention that the court at the instance of the prosecution denied him the right adequately to cross-examine the witness Gober, the district court called attention that

> "While such evidence [of prior pending charges] may be admissible in an attempt to prove prejudice or bias on the part of a witness or to show his motives for testifying, counsel for Petitioner did not apprise the Court of what he intended to prove, nor did he inform the Court that Gober had been charged, or of any purposes for which he thought this evidence might be admissible."

We do not think that is a sufficient answer to the trial court's limitation on the defendant's right of cross-examination. Luna's counsel did not know of the pending charges nor of the promise of the police officers. He was probably misled by Gober's admittedly false answer that there was no pending charge against him. As to counsel's failure to inform the court of the purposes for which he thought this evidence might be admissible, we agree with what Judge Sobeloff said for the Fourth Circuit in Barbee v. Warden, Maryland Penitentiary, supra, 331 F.2d at 846: "In gauging the non-disclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel."

In brief, we sustain each of the appellant's three contentions of denial of due process.

The judgment of the district court is reversed and the case remanded for the issuance of a writ of habeas corpus, unless the State elects to re-try Luna within a reasonable time.

Reversed and remanded with directions.

WISDOM, Circuit Judge (concurring in the result).

I concur in the result and in all of Judge Rives's opinion except that part relating to the alleged denial of the accused's right to cross-examine the witness Gober.

CONNALLY, District Judge (dissenting):

With deference to the majority, I dissent with all the vigor at my command from the order reversing this judgment. None of the three points raised, singly or collectively, warrants this action. With regard to the alleged denial of the right adequately to cross-examine the witness Gober, this is no more than a routine objection to evidence, sustained by the trial court, which the appellant seeks to raise to constitutional dimensions by referring to it as a denial of the right of cross-examination "at the instance of the prosecuting attorney".

2d 690 (decided Feb. 13, 1967); Giles v. State of Maryland, 386 U.S. 66, 17 L.Ed.2d 737 (decided Feb. 20, 1967); Mos-ley v. Dutton, 5 Cir. 1966, 367 F.2d 913; Annot. 7 A.L.R.3d 8, 31–36.

Taken in context it is clear beyond peradventure that in asking the witness Gober first as to his prior *convictions* and then (on three occasions) as to how many times he had been *charged,* defense counsel was undertaking to impeach the witness by proof of a prior criminal record. Both the district attorney and the trial judge obviously so construed the question. In sustaining the objection interposed on behalf of the state, the court was following the law of Texas, and, I believe, most other common law jurisdictions, that proof of prior conviction of a felony, or of a misdemeanor involving moral turpitude is admissible for this purpose; but that proof of charges short of conviction, is not admissible. Hunter v. State, 168 Tex.Cr.R. 160, 324 S.W.2d 17 (Tex.Cr.App.1959); Tomlinson v. State, 163 Tex.Cr.R. 44, 289 S.W.2d 267 (Tex.Cr.App.1956); Rodriquez v. State, 160 Tex.Cr.R. 453, 272 S.W.2d 366 (Tex. Cr.App.1954); See 98 C.J.S. Witnesses § 503 for similar cases in other jurisdictions.

If counsel desired to offer the testimony as to pending charges for a special or limited purpose—as to show that Gober had been offered police assistance with a charge then against him, by reason of which he might be inclined to testify for the prosecution—it was the duty of counsel to so advise the Court, so that the evidence might be received for that purpose alone and with a limiting instruction.[1]

But the defense counsel apparently had no such thought in mind. He did not make this position known to the trial court, nor were the police officers interrogated as to any promises they had made to Gober to help him with any pending charges.[2]

Under these circumstances I submit that there was no denial of the right to cross-examine the witness, and that the ruling of the trial judge was correct; but if not, this was a matter which could and should have been corrected on direct appeal and does not approach a question of constitutional magnitude.

The majority likewise reversed on the other two points, namely, the allegation (a) that the state *knowingly* permitted Gober to testify falsely, and (b) that the state *knowingly* suppressed evidence beneficial to Luna. This is so despite the fact that the evidence shows, and, as I understand it, the opinion concedes that neither was knowingly done (if done at all).

First, there is grave doubt that Gober's answer that no charges were pend-

---

1. "[W]here the relevancy or admissibility of evidence offered is not apparent it may be rejected unless there is a statement of the purpose of its introduction by which the court may determine its relevancy or admissibility. Thus it is not error to exclude a question asked by a party, unless the party states the nature of the testimony that he expects to elicit thereby, and unless it further appears that such testimony is material to the issues, and unless it appears that such testimony is relevant and responsive or unless the question is excluded without giving the party an opportunity to state what he expects to prove." 23 C. J.S. Criminal Law § 1029, pp. 1121–1123.

   "Where there is any doubt as to the relevancy of the evidence offering counsel must specify the purpose for which it is offered or other facts necessary to render it admissible. This is essential for an intelligent objection by opposing counsel and ruling by the trial judge. If he

states a purpose for which it is inadmissible he cannot complain of the ruling of the trial judge in excluding the evidence even though there was some other purpose for which it could have been received." 1 McCormick and Ray Texas Law of Evidence § 21 p. 19.
   See also Holt v. State, 98 Tex.Cr.R. 248, 265 S.W. 394 (1924); Deaton & Son Inc. v. Miller Well Serv. Co., 231 S.W.2d 944 (Tex.Civ.App.1950).

2. It is interesting to note that in the habeas corpus hearing, an extract from the record of another of the series of state cases in which Gober testified was offered and received in evidence. There the police officers were interrogated on this point, and freely admitted that they had promised to help Gober with his case in return for his part in effecting the several narcotics purchases, one of which was from the petitioner Luna.

ing against him at the time of trial *was known by him* to be false. While admittedly he was present when the charges were filed and when he made bond before the justice of the peace, the record shows that no preliminary hearing had ever been held; that it had been twice postponed at the request of the police officers without Gober having been notified to appear; and that shortly following the trial the charges in fact were dismissed. Gober—being somewhat knowledgeable in such matters—may well have concluded after a lapse of almost four months without even a preliminary hearing, that the charges were no longer pending. But whether Gober knew, or did not know, that his answer was incorrect it is undisputed that neither the district attorney nor the police officers were aware of it. As pointed out in the majority opinion, the district attorney did not know that the charges had been filed, and the police officers, who did, were excluded from the courtroom and did not hear this testimony. I am unable to see how any member of the prosecution team may be faulted for this matter which they did not bring about and of which they had no knowledge.

To support reversal on this score the majority relies on Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964). I have no quarrel with that opinion, holding, as it does, that the police may not sit idly by and see evidence offered tending to show that a crime was committed by the defendant and with the defendant's pistol, when the police knew full well that the crime had not been committed with the pistol in question. But in extending that doctrine to hold that the police should have corrected a statement of the witness Gober when they were unaware of his inaccurate testimony stretches *Barbee* far beyond the wording or the rationale of that opinion.

If the majority opinion here correctly states the law—and I hope it does not—then in a habeas corpus proceeding, years after the trial, when petitioner secures new counsel, he may go back and relitigate every issue which could and should have been explored at the trial; despite the fact that the trial counsel had every opportunity to inquire into such issues and failed to do so. And if it appears that any government witness gave an inaccurate answer, a new trial will be ordered, whether the prosecution knew or did not know of such inaccurate testimony. This completely overlooks the concept which I believe to be fundamental to our adversary system of criminal justice, and necessary if there is ever to be an end to litigation, namely, that the trial is the place to develop the evidence and to test the credibility of the witnesses by cross-examination. As the state did not knowingly permit the witness Gober to testify falsely, and did not knowingly suppress evidence beneficial to the defendant, I would affirm the judgment of the trial court.